# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | SACR 11-00148 JVS | Date: July 2, 2018 |
| Present: The Honorable | James V. Selna | |
| Interpreter | Not Present | |

| Karla J. Tunis | NOT PRESENT | NOT PRESENT |
|---|---|---|
| *Deputy Clerk* | *Court Reporter.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 24. Suzie Rodriguez | NOT | | X | Davina Chen | NOT | | X |

**Proceedings:** (IN CHAMBERS) **Further Order Denying Defendant's Renewed Motion for Bail Pending Appeal**

    Defendant Susan Jeanette Rodriguez ("Rodriguez") presented a Renewed Motion for Bail Pending Appeal. (Docket No. 1865.) The Government filed an opposition (Docket No. 1880), and Rodriguez replied (Docket No. 1881). Initially, the Court considered the application as a motion for reconsideration, and finding no basis for reconsideration, denied the application. (Docket No. 1883.)

    Upon appeal from the Court's denial, the Ninth Circuit has remanded the matter to this Court to consider Rodriguez' six new arguments and to make appropriate findings. <u>Unites States</u> v. <u>Rodriguez</u>, United States Court of Appeals for the Ninth Circuit, Docket No. 16-50213, Order, June 27, 2018 ("Remand Order").

    In its Remand Order, the Ninth Circuit denied review of the Court's initial denial of bail.[1] (Remand Order, p. 1.) The court found that in the original application, Rodriguez had not raised a "substantial question" of law or fact, or that any of the conditions triggering bail had been established. (<u>Id.</u>, pp 1-2; <u>see</u> 18 U.S.C. § 3143(b)(B).) Thus, the Court does not revisit arguments previously advanced and rejected by this Court and the Ninth Circuit.[2]

I.   <u>Background.</u>

    The background is summarized in the Court's earlier order denying Rodriguez first application for bail. (Docket No. 1819.) For convenience, a copy of that order is attached in

---

[1] Docket No. 1819 ("Bail Order").

[2] These include: the Court's substantive sentencing determination (Motion, pp. 19-24; Bail Order, p. 4); the Court's application of the "exceptional circumstances" rule (Motion, pp. 24-25; Bail Order, pp, 6-7); and the exclusion of Teresa Cantu (Motion, p. 19; Bail Order, pp. 4-5).

hereto.

II.     <u>Legal Standard.</u>

The grant of bail pending appeal is governed by statute:

b) Release or detention pending appeal by the defendant.--(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless <u>the judicial officer finds</u>–

(A) <u>by clear and convincing evidence that the person is not likely to flee or pose a danger</u> to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and <u>raises a substantial question of law</u> or fact likely to result in--

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

(18 U.S.C. § 3143(b); emphasis supplied.)  A "substantial question" is one that is fairly debatable.  <u>United States v. Handy</u>, 761 F.2d 1279, 1281 (9th Cir. 1985.)

III.    <u>Discussion.</u>

The Court turns to Rodriguez' new arguments.

A.  <u>Insufficiency of the Evidence for Count One (RICO) and Count Two (VICAR).</u>

Rodriguez argues that there is insufficient evidence to support a finding that she

agreed that at least one of the participants in the conspiracy would commit two RICO predicate acts, or that she had the intent to gain or maintain a position in the enterprise.

On a challenge to the sufficiency of the evidence, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The is a very deferential standard: A Court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." (Id. at 326.)

The testimony of co-conspirator and cooperating witness Glenn Navarro ("Navarro") is sufficient to establish both counts. Navarro said that she regularly acted as an information conduit between him an Orange County Mafia chief Peter Ojeda ("Ojeda"). (Tr. 11-25-2015, p, 146-47, 186; Docket No 1694.) She assisted others in passing messages to Ojeda. (Tr. 12-1-2105, pp. 22-23; Docket No, 1695.) Some of the messages which she passed to and from Ojeda dealt with meting out discipline through "hard candy," or murder, lists. (Tr. 12-1-2015, pp. 108-10, 114-15.) The evidence was replete with her efforts to facilitate the activities of the Orange County Mexican Mafia.

She was involved in collecting and distributing extortion money ("taxes"). (Tr. 12-1-2015, pp, 101-07.)

The evidence was sufficient for a reasonable jury to find beyond a reasonable doubt directly or by inference each of the elements of the RICO and VICAR claims.

The sufficiency of the evidence does not raise a substantial issue.[3]

B. <u>Instructional Error re RICO Elements.</u>

Rodriguez asserts that there is a conflict in the instructions with regard to the fifth element of the RICO claim. Instruction No. 32 advised the jury:

> 5.    the defendant agreed that one or more participants in the conspiracy, not necessarily the defendant, would commit at least two racketeering acts.

---

[3] The Court notes the Government's references from Rodriguez' allocution at time of sentencing, but gives no weight to her remarks for these purposes. (Opposition, pp. 8-9.) Expressing remorse for one's conduct is not that same as conceding the legal sufficiency of the evidence presented.

(Docket No. 1492, p. 40). The Court further instructed with regard to the fifth element in Instruction No. 42:

> Now that I have instructed you on the various types of racketeering, I will return to the fifth element of Count 1: the defendant agreed that one or more participants in the conspiracy, not necessarily the defendant, would commit at least two racketeering acts.
>
> You must all agree beyond a reasonable doubt as to which type or types of racketeering activity you find that the defendant knew or contemplated would be committed by one or more members of the conspiracy.

(Id., p. 65.) With regard to the requirement for a "pattern of activity," the Court informed the jury in Instruction No. 37:

> The racketeering acts need not be of the same type. However, you must all agree beyond a reasonable doubt as to which type or types of racketeering activity you find that the defendant knew or contemplated would be committed by one or more members of the conspiracy.

(Id., p. 47.)

Rodriguez contends that the net of these instruction is that the fifth element could be satisfied by merely knowing or contemplating that the predicate acts would be committed rather than agreeing that they would be.

The Court does not believe that the unanimity portion of Instruction Nos. 37 and 42 undermines the requirement for an agreement as reflected in both Instruction Nos. 32 and 42. United States v. Frega, 179 F.3d 793, 810 n.21 (9th Cir. 1999), notes that "the conspiracy must contemplate the commission of two predicate acts by one or more of its members." This describes the object of the conspiracy; not the agreement element. United States v. Salinas, 522 U.S. 52, 64-66 (1997), makes the point that the defendant committed the crime when "he knew about and agree to facilitate the scheme." Obviously, knowledge does not vitiate or substitute for an agreement.

There was extensive discussion in settling the instructions with regard to the fifth element. (Tr. 12-21-15, pp. 30-35, Docket No. 1832.) At a subsequent settling session, the defendants agreed to the Court's formulation of the fifth element, and never objected to the use of "knew or contemplated" in the unanimity instructions. (Tr. 1-6-16, p. 211, Docket No.

1708.)

The Court finds that its instructions on the requirement for an agreement taken as a whole were not "misleading or inadequate to guide the jury's deliberation." <u>United States v. Shryock</u>, 342 F.3d 948, 986 (9th Cir. 2003). Given the lack of any objection, it is likely that Ninth Circuit would have to review the instructions under the plain error doctrine. However, improper jury instructions "rarely justify a finding of plain error." <u>United States v. Armijo</u>, 5 F.3d 1229, 1232 (9th Cir. 1993).

This claim of instructional error does not raise a substantial question.

C. <u>Mid-Trial Instructions.</u>

Following the Thanksgiving recess, the Court gave the following instruction in response to events at trial:

> Before Thanksgiving, you heard testimony with regard to how the recorded passages you heard were selected. You also heard that the Government did not prepare complete transcripts for some recordings. Once the Government produced a recording, any party was free to make its own transcription.
>
> An opposing party is free to request the Court to order additional portions of a recording be played where necessary to place the portions played in context or to avoid any misleading impression resulting from just the portions played.
>
> Before Thanksgiving, you also heard testimony that the Government utilized a jailhouse informant in connection with the Government's investigation of this case. Law enforcement officials may engage in stealth and deception, such as the use of jailhouse informants, in order to investigate criminal activities. As with all evidence, it is for you to determine the weight to be given any item of evidence.
>
> Ladies and gentlemen, you are to consider these instructions along with all the others. The fact that I have read them separately is on no particular significance, and I don't intent by that to given them any particular emphasis. All my instructions will be important and should be taken together.

(Tr. 12-2-18, pp. 138-39, Docket No. 1516). Rodriguez objects to these instructions on several

grounds.

*Complete transcripts.* Rodriguez objects that the instruction "was so incomplete as to be inaccurate." (Motion, p. 10.) However, Rodriguez admits that the rule of completeness was fairly stated. (Id.) The fact that the Court did not further instruct about admissibility of co-conspirator statements and the inadmissability of the defendants' hearsay statements is beside the point. Moreover, nothing in the instruction barred the jury from considering or undermined the theme that the Government had been selective (biased) in its presentation of the evidence.

*Request for playing additional portions.* The Court's advice to the jury did not result in shifting any burden to the defendants, but merely informed the jury that if defendants thought there was unfairness, they could ask for more complete readings. The Court's instruction did not require the defendants to do anything. Nothing in the instruction conflicted with the Government's ultimate and overriding obligation to prove its case beyond a reasonable doubt. (Instruction No. 4, p. 5, Docket No. 1492.)

*Use of Informants.* The Court's instruction on the use of informants tracked the Ninth Circuit Model Instruction 4.10, and was legally accurate.[4] The instruction was directly relevant to the testimony which the jury was hearing. Unlike United States v. Ramirez, 714 F.3d 1134, 1137 (9th Cir. 2013), which dealt with an instruction regarding the Government's decision not to call a witness, the Court's guidance did not "effectively instruct[] the jury not to fall for defense counsel's argument." It in fact says nothing about anything the jury should do.

The instructions which the Court gave mid-trial do not raise a substantial issue.

IV.     Conclusion.

None of the new arguments advanced by Rodriguez raises a substantial issue of law or fact within the meaning of the bail statute. The renewed motion for bail pending appeal is denied.

                                                                    00  :  00
                                                    Initials of Deputy Clerk   kjt

---

[4] Defendants felt the instruction would be "fine" if given at the end of the case. (Tr. 12-1-15, p. 177, Docket No. 1695.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | SACR 11-00148 JVS | Date: May 11, 2017 |
| Present: The Honorable | James V. Selna | |
| Interpreter | Not Present | |

| Karla J. Tunis | NOT PRESENT | NOT PRESENT |
|---|---|---|
| *Deputy Clerk* | *Court Reporter.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 24. Suzie Rodriguez | NOT | | X | Davina Chen | NOT | | X |

**Proceedings:**  (IN CHAMBERS )
Order Denying Defendant's Application for Bond on Appeal

On June 7, 2016, defendant Susan Jeanette Rodriguez ("Rodriguez") was sentenced to 78 month in the custody of the Bureau of Prisons on Count 1 of the Second Superseding Indictment for violation of 18 U.S.C. § l962(d), conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and Count 2 for violating 18 U.S.C. § 1959(d), conspiracy to violate the Violent Crimes in Aid of Racketeering Act ("VICAR"). Shortly thereafter, Rodriguez was remanded to custody. Rodriguez has applied for release on bond pending appeal. (Docket No. 1669.) The Government opposes the application (Docket No. 1730), and Rodriguez has replied (Docket No. 1770).

For the reasons set forth below, the Application is denied.

I.    Background.

On June 29, 2011, the United States filed a sealed three-count indictment, naming 28 defendants. Count 1 of the indictment charged a conspiracy to violate the RICO statute, and Counts 2 and 3 alleged violations of the VICAR statute. In the original Indictment, Rodriguez was named in only Count 1. In the First and Second Superseding Indictments, Rodriguez was also named in the single remaining VICAR count. (Docket Nos. 1146, 1265.)[1]

In early fall 2015, only four of the original defendants remained. The Government made binding Rule 11(c)(1)(C) plea offers to each, including Rodriguez. (Docket No. 1326, Plea Agreement.) However, the Government's acceptance of the offers was contingent on all four defendants accepting the offers, thus avoiding any trial. (Id., ¶2.) The Plea Agreement contemplated the Rodriguez would plead only to the RICO count, and rather predicating the

---

[1] The Government proceeded to trial on the Second Superseding Indictment.

Guidelines calculation on a predicate act, she would plead to the unspecified base offense level of 19. (Id., ¶ 14, citing U.S.S.G. § 2E1.1(a)(1).) The Guidelines calculation also included a 3-level role reduction. (Plea Agreement, ¶ 14.) The parties agreed sentence consisted on 1 day in prison and 12 month in a community confinement facility with a work release program or home detention or a combination of the two. (Id., ¶ 16.)

The trial commenced on October 29, 2015 and concluded on January 13, 2016 after 35 days of trial. Rodriguez was found guilty on both counts. Specifically, on the RICO conspiracy count, the jury found predicate acts of murder, extortion, and narcotics trafficking. (Docket No. 1503, p. 5.) On the VICAR conspiracy count, the jury found predicate acts of murder and assault resulting in serious bodily injury. (Id., p. 9.)

The Guidelines calculation which the Court adopted in light of the jury's findings differed substantially from the Guidelines calculation in the Plea Agreement. Rather than using the base offense level of 19, the Court used the conspiracy to murder offense level 33 in analyzing both the RICO and VICAR counts. (Docket No. 1595, p. 2.) The Court declined to adopt a role reduction after comparing her conduct to the conduct of the other "secretaries" in the case. (Id., pp. 2-3.) However, the Court took into account her role in adopting a 3-level Booker variance. (Id., p. 7.)

II.     Legal Standard.

The grant of bail pending appeal is governed by statute:

b) Release or detention pending appeal by the defendant.--(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds–

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--

(i) reversal,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

  (ii) an order for a new trial,

  (iii) a sentence that does not include a term of imprisonment, or

  (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

(18 U.S.C. § 3143(b); emphasis supplied.) A "substantial question" is one that is fairly debatable. United States v. Handy, 761 F.2d 1279, 1281 (9th Cir. 1985.)

  Where the maximum penalty for a crime is life in prison, there are additional considerations. The presumption is that the defendant be detained. 18 U.S.C. § 3143(b)(2), referencing 18 U.S.C. § 3142(f)(1)(B). The presumption can be avoided for exceptional reasons. 18 U.S.C. 3145(c); United States v. Garcia, 340 F.3d 1013, 1015-21 (9th Cir. 2003).

II.  Discussion.

  Before considering the statutory elements, the Court addresses Rodriguez' repeated[2] theme that the sentence here–78 months–is grossly unfair in light of the agreed sentence in the Plea Agreement. At the time of the Plea Agreement, there were no jury findings; when the Court sentenced, there were. Moreover, the predicate acts–murder, extortion, drug trafficking, and infliction of serious bodily injury–cannot be cast off as inconsequential, academic offenses, particularly in the gang world. In Category I, the difference between the low end at offense level 19 and level 33 is more than 100 months (30 months vs. 135 months). Rodriguez chose to proceed to trial, and while circumstance beyond her control denied her the benefit of a favorable plea deal, she could always have pled to the Court. It is neither harsh nor vindictive to sentence Rodriguez on the basis of the facts which the jury found.

  A. Requirements for Bail.

  The Court now turns to each of the elements for a grant of bail pending appeal.

  First, the Court agrees with Rodriguez, and finds by clear and convincing evidence that she is not likely to flee, and she is not a danger to others or the community. (18 U.S.C. §

---

[2] Rodriguez repeats this point at least 7 times in her filings. (Application, pp. 1-2, 5, 7, 10; Reply, pp. 1, 3, 15.), For example, "The chain of events . . . exacted a 234,000% trial penalty." (Application, p. 5.)

3143(b)(A).) There were no incidents while she was on pretrial release.

Second, the Court finds that the appeal has not been filed for purposes of delay. (18 U.S.C. § 3143(b)(B).) Wholly apart from the sentence of imprisonment, the appeal raises legitimate issues arising from a long and complicated trial.

Third, assuming that Rodriguez has raised a substantial question, which the Court discusses next, she must establish that one of four appellate results is likely.

• <u>Non-Custodial</u> <u>Sentence.</u> The Court does not believe that there is a likelihood of a non-custodial sentence given the jury's findings with regard to the RICO and VICAR predicate acts.

• <u>Sentence</u> <u>Less</u> <u>Than</u> <u>Time</u> <u>for</u> <u>Appeal.</u> The Court does not believe that the time for appeal will exceed the likely duration Rodriguez' sentence. The Court understands that the median time for disposition of appeals for the Ninth Circuit is approximately 15 months.[3] Even allowing for the complexity of this case, the appeal is likely to be resolved long before the completion of Rodriguez' sentence.

•<u>New</u> <u>Trial</u> <u>and</u> <u>Reversal.</u> These prospects turn on the merits. Rodriguez raises a number of substantive issues.

First, the Court does not believe that the sentence imposed raises a substantial issue for appeal. The Court has explained the basis for its sentencing above. It is clear from its Sentencing Memorandum that the Court understood that it had discretion, and in fact exercised that discretion. (Docket No. 1595, pp. 7, 8.)

Second, the Court does not believe that its exclusion of Rodriguez' sister Teresa Cantu raised a substantial issue. The Court believes that it correctly determined that her proffered testimony with regard to her husband Tommy Rodriguez went to duress, a defense which Rodriguez did not preserve, and not specific intent. <u>See</u> <u>United</u> <u>States</u> <u>v.</u> <u>Vasquez-Landaver</u>, 527 F.3d 798, 802 (9th Cir. 2008) ("a defendant is not entitled to present a duress defense to the jury unless the defendant has made a prima facie showing of duress in a pre-trial offer of proof"). To the extent, Cantu was to offer character evidence, the Court found that it would create undue sympathy. In any event, other evidence was presented concerning Rodriguez' good deeds, and her good deeds were

---

[3] http://jnet.ao.dcn/sites/default/files/statistics/fcms/2016/december/FCMS_Appeals_Profiles_December_2016.pdf#page=21, last visited May 9, 2017.

argued to the jury.[4]

Third, the Court does not believe that <u>Burrage</u> v. <u>United States</u>, 14 S.Ct. 881, 886-87 (2014), raises a substantial issue with regard to the required motive for violating VICAR. The "but-for" requirement with regard to the cause of injury under the drug distribution statute, 21 U.S.C. § 841, is inapposite, and has no bearing on the motive requirement under VICAR. The Court instructed:

> With respect to the fourth element of Count Two, it is not necessary for the government to prove that the required motive was the sole purpose, or even the primary purpose of the defendant in conspiring to commit the charged crime. You need only find that enhancing the defendant's status in the alleged enterprise was a substantial purpose of the defendant or that the defendant conspired to commit the one or both of the alleged crimes of violence (<u>i.e.</u>, murder or assault resulting in serious bodily injury) as an integral aspect of membership in the enterprise.

(Docket No. 1492, Court's Instruction No. 48.) As an aside, the instruction which the Court gave was a joint instruction, and thus any error was invited. <u>United States v. Perez</u>, 116 F.3d 840, 845 (9th Cir. 1997) (en banc); Docket No. 1319, Defendants' Proposed Jury Instructions Nos. 62(B). In any event, the Court's instruction followed <u>United States v. Banks</u>, 514 F.3d 959, 964-67, 969 (9th Cir. 2008), which continues to be good law following <u>Burrage</u>. <u>United States v. Smith</u>, 831 F.3d 1207, 1218 (2016).

Fourth, the Court does not believe that its instructions with regard to the required knowledge of the RICO conspiracy raises a substantial question. Here, as well, the Court's instructions were based largely on joint or defense instructions. (Docket No. 1319, pp. 59-125.) Court's Instructions 27, 29, and 32 adequately and correctly informed the jury of the requisite knowledge. (Docket 1492, pp. 32-33, 35, 39-40.) The Court does

---

[4]Rodriguez' counsel told the jury in closing argument:

She was a concerned mother for Freddie, her son. We heard that at some point during Freddie's younger years, she was the team mom. We heard that from Oscar Moriel.

She was a caring friend. She was a caretaker. Not only did she take in Eddie Ojeda, but she also took in Mr Rodriguez's mother when she was dying and on hospice. We also heard from Mr. Moriel that she was always going to church. She was really into church because she's a churchgoer. That's the type of person Suzie is.

I believe Glenn Navarro even said she was an upstanding citizen.

(Tr. Jan. 8, 2016, p. 65.)

not believe that the more specific language in United States v. Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004), was required.[5] Moreover, the Court's instructions were consistent with the Ninth Circuit's model instructions. (Ninth Circuit Model Instructions 8.20, 8.23.)

The Court does not believe that Rodriguez has established a substantial question which would trigger any of the four bases for granting bail.

      B. Exceptional Reasons.

Rodriguez argues that that mandatory detention requirements do not apply, and that in any event, she has established exceptional reasons.

Rodriguez looks to California law to assert that threatening murder of attempted murder are not punishable by a term of life. (Application, pp. 19-20.) However, under federal law a conspiracy to murder–the charge here–is punishable "by imprisonment for any term of years or for life." (18 U.S.C. § 1117.) United States v. Fowles, 337 Fed. Appx. 610 (9th Cir. 2009), is inapposite in that it did not deal with a conspiracy to murder. However, even under California law, a conspiracy to murder is punishable just as the crime of murder itself. (Cal. Penal Code § 182 ("When they conspire to commit any other felony, they shall be punishable in the same manner and to the same extent as is provided for the punishment of that felony.") Murder is punishable by life in prison under California law. (Cal. Penal Code § 190(a).) Thus, 18 U.S.C. § 3143(b)(2) is applicable under 18 U.S.C. § 3141(f)(1)(B).

The Government points out that the result would be same under 18 U.S.C. § 3142(f)(1)(A) because both RICO and VICAR carry sentences of more than ten years and are crime of violence. (Opposition, pp. 3-4.) The Court agrees.

Turning to the question whether circumstances here are exceptional, the Court finds that they are not. To be sure, Garcia notes that the range of relevant factors is wide. Garcia, 340 F.3d at 1018. Indeed, the Ninth Circuit "place[s] no limit on the range of matters the district court may consider. Rather, the court should examine the totality of the circumstances and, on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors (bearing in mind the congressional policy that offenders who have committed crimes of violence should not, except in exceptional cases, be released pending appeal) it would be unreasonable to incarcerate the defendant

---

[5] Moreover, as the Government points out (Opposition, p. 18), Fernandez was not dealing the with the court's instructions in that case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

prior to the appellate court's resolution of his appeal." (Id. at 1018-19; emphasis supplied.)

None of the illustrations in Garcia points to exceptional reasons here. The Court cannot say given the extent and duration Rodriguez' participation in the affairs of the Orange County Mexican Mafia that her participation in the conspiracy was aberrant, even though she has no prior criminal history. (See id. at 1019.) The length of the sentence which the Court has imposed is not so short as to counsel a release pending appeal. (Id.) Rodriguez is not suffering from medical or other hardships. (Id. at 1019-20.) The Court cannot say that there is an "unusually strong chance . . . [for] reversal." (Id. at 1020.) Nor is this a case where the defendant provided "a substantial societal benefit" through cooperation. (Id. at 1020.)

The circumstances of the failed plea offer do not contribute to a finding of exceptional reasons. (See Application, p. 22-23.) She in fact received a reduction for accepting responsibility,[6] and in any event Rodriguez could have pled to the Court knowing what the Government's pretrial recommendation had been even if it were no longer bound by it.

The Court acknowledges as it did at sentencing that Rodriguez has done many good works, and had a substantial employment history. (Docket No. 1595, p. 7.) But when the Court considers the seriousness of the crime, particularly passing notes to facilitate murder and other crimes of serious violence, the Court cannot say that the totality of circumstances provide exceptional reasons to depart from the presumption of detention.

III.     Conclusion.

For all the foregoing reasons, the Application is denied.

                                                                00    :    00
                                                Initials of Deputy Clerk    kjt

---

[6] Unlike United States v. Johnson, 956 F.2d 894, 905 (9th Cir. 1992), where the failed plea arrangement denied the defendant the benefits of a reduction for accepting responsibility, the Court in fact adopted a 2-level reduction for Rodriguez post-verdict acceptance of responsibility. (Docket No. 1595, p. 3.)